IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO FERNANDEZ,<br><br>   Petitioner,<br><br>   v<br><br>DAVID L RUNNELS, Warden,<br><br>   Respondent.<br>_____/ | No C 05-3529 VRW (PR)<br><br>ORDER DENYING PETITION FOR A<br>WRIT OF HABEAS CORPUS |

   Eduardo Fernandez seeks a writ of habeas corpus under 28 USC § 2254 following his conviction by a Santa Clara County superior court jury for assault with a deadly weapon and attempted voluntary manslaughter. The jury also found enhancements for personal use of a deadly weapon, for personally causing great bodily injury, and for a prior prison term. On May 17, 2001, petitioner was sentenced to eight years in state prison. He is currently serving his sentence at the California Correctional Institution in Tehachapi, California.

   On December 31, 2002, the California Court of Appeal affirmed the judgment of the trial court and on March 19, 2003, the

California Supreme Court denied review.

On April 19, 2004, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. It was denied on March 2, 2005.

On August 31, 2005, petitioner filed the instant petition under § 2254. On January 24, 2006, this court found petitioner's claims were cognizable under § 2254 when liberally construed and ordered respondent to show cause why a writ of habeas corpus should not be granted. On February 28, 2006, respondent instead filed a motion to dismiss the petition as untimely under § 2244(d). On August 2, 2006, this court denied respondent's motion to dismiss. Respondent filed his answer to the order to show cause on September 11, 2006, and on April 18, 2007, petitioner filed a traverse.

I

The California Court of Appeal summarized the factual background of the case as follows:

**Prosecution's Case**

On August 25, 2000, defendant's niece was celebrating her 20th birthday with a large party at her father's home in San Jose. Terry Johnson went to the party with eight of his friends. While there, he had two 12-ounce beers in two and one-half hours. Johnson and his friends left the party around midnight. When Johnson got outside the house, he remembered that he had left his jacket upstairs and went back inside to retrieve it.

About this time, defendant arrived, accompanied by his friend, Gandhi. The house was packed. Defendant estimated that there were 300 people there. A disc jockey (DJ) was playing

2

music in the living room. There were approximately 30 people on the stairs. Defendant was standing near the bottom of the stairwell as Johnson came down the stairs. It was so crowded, Johnson had to squeeze by people on the stairs. He bumped into several people, including defendant.

Johnson had never met defendant before. Defendant said, "Who you pushing?" Johnson turned and faced defendant. He put out his hand and said, "my bad," meaning "Excuse me." Defendant said he didn't want to shake Johnson's hand. Johnson said, "Be a man and shake my hand." Defendant seemed upset and responded with, "Get out of my face." Defendant made a fist with his right hand and stabbed Johnson in the chest with a knife. The first blow pushed Johnson back. Defendant came at him again and stabbed Johnson in the left ribs. Johnson never saw the knife. At first, he thought defendant had just punched him.

Johnson started to fight back and punched defendant in the face. Everyone got out of the combatants' way. Defendant bent down. When he came back up, he stabbed Johnson in the stomach. This time, Johnson realized that he had been stabbed because he could feel the knife blade coming out of his stomach. Defendant was standing directly in front of Johnson when he was stabbed in the stomach. Johnson saw defendant make the stabbing motion. Someone other than defendant broke a bottle over Johnson's head. Johnson's watch fell off. As he bent over to pick it up, defendant and his friend ran out. Johnson's friends came inside, saw what had happened, and took Johnson to the hospital.

At the hospital, Johnson was treated for stab wounds to his chest, left rib area, stomach, and right elbow. He also had broken ribs. Johnson spent three days in the hospital. He was off work for a month. He still has weakness in his right arm, sensitivity in his rib area, and scars from the stab wounds.

Johnson never saw a knife in defendant's hands. He did not see anyone else with a weapon. Johnson did not know who stabbed him in the elbow. He assumed it was defendant, because defendant inflicted the other stab wounds.

3

Johnson did not belong to a gang. The knife was never found.

**Defense Case**

Defendant testified at trial. When he got to the party, he observed a "bunch of gang members" wearing colors, including, crips, bloods, and nortenos. Defendant had been in trouble with the law before. He had been convicted of both misdemeanors and felonies and had spent time in prison. That was where he learned about gangs. He recalled seeing a gang member who had a knife in his belt near the DJ.

According to defendant, Johnson was drunk and was bumping into everyone as he came down the stairs. Johnson shoved defendant hard and kept on going. Defendant said "can't you say excuse me or something?" Johnson turned around, walked back, and asked, "What did you say?" Defendant repeated his request. Johnson responded: "Man, fuck you." Johnson and defendant continued to exchange words. Johnson then said, "Do you know how many brothers are here, and nobody could fuck with us?" According to defendant, that was the wrong thing to say at a norteno party. The people around them froze.

Defendant admitted that Johnson tried to shake his hand. He made a fist because he thought Johnson was going to strike him. He then slapped Johnson's hand and said, "Do me a favor and get out of my house, you and your little clique, you get out of my house." Johnson responded, "Man, fuck you, this is my house." Defendant took those as fighting words and struck Johnson in the face. Johnson flew backwards and the two men began punching each other. After throwing his last punch, defendant saw Johnson fly into the crowd. Someone hit Johnson with a bottle and four or more people jumped him. Defendant was the only one fighting with Johnson before he was hit with the bottle. He was right in front of Johnson during that time. Defendant said "Let's get out of here" to Gandhi. Defendant was on parole and did not want to get busted "for just fighting."

Although defendant admitted to hitting Johnson, he denied having a knife or stabbing Johnson. He asserted that Johnson had backed into the wrong crowd and that someone else was

4

> responsible for Johnson's stab wounds. However, he did not see who stabbed Johnson.
>
> Defendant denied being a member of a gang. Gandhi was a norteno. Defendant thought Johnson was a gang member because he was wearing an orange bandana. It looked red to him in the dark house. After the incident, defendant left his 15- and 20-year old nieces to fend for themselves, even though he was the senior family member on the premises.

People v Fernandez, No H023194, 2002 Cal App Unpub LEXIS 12175, at ** 2-6 (Cal Ct App Dec 31, 2002).

## II

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v Taylor, 529 US 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

5

the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id at 409.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id at 412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069 (9th Cir 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

III

Petitioner seeks federal habeas relief based on three claims: (1) there was insufficient evidence to support the jury's finding that petitioner was armed with a knife; (2) trial counsel was ineffective in failing to develop meritorious defenses, failing to secure the service of investigators to investigate potential

6

defenses, failing to secure expert witnesses necessary to prepare a meritorious defense, failing to challenge the sufficiency of the evidence, and failing to argue that California Penal Code section 654 prohibits multiple punishment; and (3) appellate counsel was ineffective in failing to present the issues described herein on appeal to the state courts.

### A

Petitioner claims that there was insufficient evidence to support the jury's finding that petitioner was armed with a knife during the assault on Johnson. A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence was established beyond a reasonable doubt. <u>Payne v Borg</u>, 982 F2d 335, 338 (9th Cir 1992). Rather, the relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v Virginia</u>, 443 US 307, 319 (1979) (emphasis in original). The reviewing court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id at 326.

The California Supreme Court summarily rejected petitioner's insufficient evidence claim. A review of the record

shows that the court's denial was not contrary to, or involved an unreasonable application of, the <u>Jackson</u> standard.  See 28 USC § 2254(d).

The physical altercation between petitioner and victim Johnson, who had never met before, erupted after Johnson bumped into petitioner on crowded stairs during a party at petitioner's niece's house.  <u>People v Fernandez</u>, 2002 Cal App Unpub LEXIS 12175, at *3.  The pair exchanged increasingly angry words after Johnson offered his hand to apologize and petitioner refused to shake it.  Id.

Petitioner then made a fist and struck Johnson in the chest, pushing Johnson back.  Id.  Petitioner approached again and struck Johnson in the left ribs.  Id.  Following this second blow, Johnson moved to respond and struck petitioner in the face.  Id.  By this juncture the crowd around the fighting men had cleared.  Id.  Petitioner, now standing directly in front of Johnson, struck Johnson in the stomach.  Id.  Johnson testified that he felt a knife exit his stomach on the third strike.  Id.  Johnson also saw petitioner make a stabbing motion towards his stomach during this third strike.  Id.  Someone other than petitioner then struck Johnson on the head with a bottle.  Id.  Petitioner and a friend who had accompanied him to the party fled the scene after the third blow, while Johnson's friends arrived and escorted him to the hospital.  Id.  At the hospital, Johnson was treated for stab wounds to his chest, left rib area, stomach, and right elbow.  Id at *4.

At trial, petitioner took the stand in his own defense and admitted striking Johnson, but denied wielding a knife.  Id.  Petitioner contended that someone else in the crowd surrounding the

8

1 fighting men stabbed Johnson. Id. Petitioner testified that he did
2 not see the person who stabbed Johnson. Id.

3       Contrary to petitioner's assertion, substantial
4 circumstantial evidence supports the jury's finding that petitioner
5 was armed with a knife. See Walters v Maass, 45 F3d 1355, 1358 (9th
6 Cir 1995) (circumstantial evidence and inferences drawn from that
7 evidence may be sufficient to sustain a conviction). The wounds to
8 Johnson's chest, left rib area, and stomach are consistent with the
9 locations where petitioner struck Johnson. And during petitioner's
10 third strike, Johnson observed petitioner make a stabbing motion
11 towards his stomach and felt a knife leave his stomach. A rational
12 juror certainly could have found it beyond a reasonable doubt that
13 petitioner was armed with a knife. See Jackson, 443 US at 319.

14       It matters not that Johnson conceded at trial that he did
15 not see petitioner holding the knife. A rational juror could have
16 found that petitioner concealed the blade in his clenched fist. Nor
17 does it matter that the knife was never recovered. Petitioner had
18 ample time following the assault to dispose of it. Finally,
19 petitioner's claim that a different assailant had inflicted the stab
20 wounds on Johnson was unsubstantiated at trial and the defense put
21 forth no witnesses or other evidence to buttress petitioner's claim.
22 A rational juror certainly could have rejected the claim.

23       In sum, it cannot be said that, after viewing the evidence
24 in the light most favorable to the prosecution, no "rational trier
25 of fact" could have found it beyond a reasonable doubt that
26 petitioner was armed with a knife. See Jackson, 443 US at 319. The
27 state court's rejection of petitioner's claim was not contrary to,
28

United States District Court
For the Northern District of California

or involved an unreasonable application of, clearly established Supreme Court precedent.  See 28 USC § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.

B

Petitioner claims that he was denied effective assistance of trial counsel by his counsel's failure to develop meritorious defenses, failure to secure investigators to explore potential defenses, failure to secure expert witnesses, failure to challenge the sufficiency of the evidence and failure to challenge the trial court's allegedly erroneous sentencing of petitioner under California Penal Code section 654.

In order to prevail on an ineffective assistance of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i e, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Strickland v Washington</u>, 466 US 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i e, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.  Id.

The California Supreme Court summarily rejected each of petitioner's ineffective assistance of counsel claims.  A review of the record shows that the court's denials were not contrary to, or

10

involved an unreasonable application of, the Strickland standard. See 28 USC § 2254(d).

Petitioner claims that counsel was ineffective in failing to develop a meritorious defense, and in failing to secure investigators to explore potential defenses and witnesses. The claims are without merit.

A criminal defense attorney has a general duty to make reasonable investigations. See Strickland, 466 US at 691. The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed, however. See Hendricks v Calderon, 70 F3d 1032, 1040 (9th Cir 1995). In order to establish prejudice from the failure to interview and call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony and that the witness' testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. Alcala v Woodford, 334 F3d 862, 872-73 (9th Cir 2003). A petitioner's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. See Bragg v Galaza, 242 F3d 1082, 1087 (9th Cir), amended, 253 F3d 1150 (9th Cir 2001).

Petitioner's claims fail because he does not identify the additional meritorious defenses counsel neglected or could have discovered with "reasonable investigations." Strickland, 466 US at 691. Nor does he identify what additional information would be gained had counsel retained investigators to explore potential defenses and witnesses.

11

Petitioner claims that counsel should have interviewed and subpoenaed "several people who were at the scene of the incident" who would have "testified that petitioner did not stab the victim." Pet at 17. But he does not identify these "several people" or provide other identifying details. Nor does he describe his basis of knowledge for believing they would testify on his behalf. One reasonable inference, of course, is that petitioner's claim that these witnesses exist is only conjecture. See Bragg, 242 F3d at 1087. In any event, it is impossible for this court to assess both the materiality of these alleged witnesses and the probable effect their testimony may have had on the outcome of the trial. Petitioner's assertions are speculative and do not establish that counsel's performance was deficient; nor do they establish that a different outcome at trial was reasonably probable had counsel undertaken additional investigation or found unidentified and possibly non-existent people from the party who might have testified for petitioner. See Alcala, 334 F3d at 872-73.

Petitioner also claims that counsel was ineffective for failing to retain expert witnesses. Expert testimony is necessary when lay persons are unable to make an informed judgment without the benefit of such testimony, see Caro v Calderon, 165 F3d 1223, 1227 (9th Cir 1999); but where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel. See Wilson v Henry, 185 F3d 986, 990 (9th Cir 1999). Here, as with his claim that counsel should have developed other defenses, petitioner's claim fails for a lack of specificity. Petitioner does not identify which expert witnesses counsel should

12

have retained and does not describe how an expert witness might have buttressed his defense. Nor can the court identify factual matters of sufficient complexity in the record that expert testimony was required for "lay persons... to make an informed judgement." Caro, 165 F3d at 1227. Petitioner has not established that counsel's failure to secure expert witnesses prejudiced his defense. See Wilson, 185 F3d at 990.

Petitioner next claims that counsel was ineffective in failing to challenge the sufficiency of evidence that petitioner was armed with a knife. This claim fails because, as discussed above, there was sufficient circumstantial evidence for a rational trier of fact to find it proven beyond a reasonable doubt that petitioner was armed with a knife. See Jackson, 443 US at 319. Petitioner's trial counsel was not constitutionally deficient for not raising a meritless argument. See Wilson, 185 F3d at 990. It certainly cannot be said that, had counsel moved for dismissal or mistrial on the ground that there was insufficient evidence petitioner was armed with a knife, it is reasonably probable that the motion would have been granted. See id. Petitioner's claim that his trial counsel was ineffective in failing to challenge the sufficiency of the evidence is without merit.

Petitioner finally claims that counsel was ineffective in failing to challenge the trial court's allegedly erroneous application of California Penal Code section 654 at sentencing. The claim is without merit.

The Strickland Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which . . . may require a

13

different approach to the definition of constitutionally effective assistance.'" <u>Cooper-Smith v Palmateer</u>, 397 F3d 1236, 1244 (9th Cir 2005) (quoting <u>Strickland</u>, 466 US at 686).  After <u>Strickland</u>, the Court has not delineated a standard for ineffective assistance of counsel claims in noncapital sentencing cases.  Id.  Consequently, the Ninth Circuit has held that there is no clearly established Supreme Court precedent within the meaning of 28 USC § 2254(d) in the noncapital sentencing context.  Id.  Petitioner is precluded from federal habeas relief on his claim of ineffective assistance because the Ninth Circuit has concluded that there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context.  See <u>Davis v Grigas</u>, 443 F3d 1155, 1158 (9th Cir 2006) (finding that the lack of clearly established Supreme Court precedent in the context of assistance of counsel during noncapital sentencing precluded habeas relief); <u>Cooper-Smith</u>, 397 F3d at 1236-37 (same).

     Even if <u>Strickland</u> applied to ordinary sentencing, petitioner's claim would fail because it is based on a faulty analysis of California law.  Petitioner was sentenced to an aggregate eight-year term in state prison, which included the middle term of three years for the attempted manslaughter, a three-year consecutive term for the great bodily injury finding, a one-year term for the weapon use enhancement, and a one-year enhancement for the prison prior.  The trial court also sentenced petitioner to six years for the assault with a deadly weapon plus sentence enhancements, but stayed this part of the sentence pursuant to section 654.

14

California Penal Code section 654 provides in relevant part:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.

Cal Penal Code § 654. Petitioner maintains that his conviction for attempted voluntary manslaughter and the enhancements for personal use of a deadly weapon and great bodily injury all arise out of the same act or omission. Pet at 31. He argues that the trial court's imposition of a three-year term for the great bodily injury enhancement and a one-year term for the weapons use enhancement violated section 654's command against punishment under more than one provision, and that his trial counsel was ineffective in failing to argue as much.

Petitioner's claim is without merit because his analysis of California law is flawed. California Penal Code section 1170.1(f) provides:

> When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury.

Cal Penal Code § 1170.1(f). In addition, subdivision (g) of section 1170.1 provides:

> When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single

15

>               offense, only the greatest of those enhancements
>               shall be imposed for that offense. This
>               subdivision shall not limit the imposition of
>               any other enhancements applicable to that
>               offense, including an enhancement for being
>               armed with or using a dangerous or deadly weapon
>               or a firearm.

Cal Penal Code § 1170.1(g). California law clearly authorizes the imposition of a weapons use enhancement and a great bodily injury enhancement for the same offense. The trial court did not err in sentencing petitioner; counsel's failure to raise a meritless objection during sentencing was neither deficient nor prejudicial under <u>Strickland</u>. See <u>Wilson</u>, 185 F3d at 990.

The California Supreme Court reasonably applied the <u>Strickland</u> standard in rejecting each of petitioner's ineffective assistance of counsel claims. Petitioner is not entitled to federal habeas relief on his claims of ineffective assistance of trial counsel. See 28 USC § 2254(d).

C

Petitioner claims that his appellate counsel was ineffective in failing to raise the issues described above on direct appeal in the state courts. Claims of ineffective assistance of counsel on appeal are reviewed according to the standard set out in <u>Strickland</u>. <u>Miller v Keeney</u>, 882 F2d 1428, 1433 (9th Cir 1989); <u>United States v Birtle</u>, 792 F2d 846, 847 (9th Cir 1986). Petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable

16

1 probability that, but for counsel's unprofessional errors, he would
2 have prevailed on appeal.  Miller, 882 F2d at 1434 & n9 (citing
3 Strickland, 466 US at 688, 694; Birtle, 792 F2d at 849).

4 Appellate counsel does not have a constitutional duty to
5 raise every non-frivolous issue requested by defendant.  See Jones v
6 Barnes, 463 US 745, 751-54 (1983); Gerlaugh v Stewart, 129 F3d 1027,
7 1045 (9th Cir 1997); Miller, 882 F2d at 1434 n10.  The weeding out
8 of weaker issues is widely recognized as one of the hallmarks of
9 effective appellate advocacy.  See id at 1434.

10 The California Supreme Court reasonably applied the
11 Strickland standard in summarily rejecting petitioner's claim of
12 ineffective assistance of appellate counsel.  See 28 USC § 2254(d).
13 As described above, none of the claims that petitioner argues his
14 appellate counsel should have raised on appeal has merit.
15 Petitioner's appellate counsel, in choosing not to raise meritless
16 arguments, exemplified the "weeding out" of frivolous claims that is
17 demanded of appellate advocates.  See Miller, 882 F2d at 1434.

18 Petitioner has not established that appellate counsel's
19 performance fell below an objective standard of competence within
20 the meaning of Strickland.  See id.  Nor has he established that he
21 suffered prejudice.  Petitioner has not shown that it is reasonably
22 likely he would have prevailed on appeal but for appellate counsel's
23 decision not to raise the frivolous claims.  See id.  Petitioner is
24 not entitled to federal habeas relief on his ineffective assistance
25 of appellate counsel claim.  See 28 USC § 2254(d).

IV

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

G:\PRO-SE\VRW\HC.05\Fernandez1.denial.wpd

18